UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHERRYL SNODGRASS CAFFEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-02-S-0755-NE |
| ) | |
| STATE OF ALABAMA, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This action is before the court on multiple motions: a motion to dismiss by defendants State of Alabama and various officials of Limestone County, Alabama (*i.e.*, Circuit Judge James W. Woodroof, Jr., District Attorney Kristi A. Valls, Assistant District Attorney Brian Jones, Circuit Court Clerk Charles Page, Jr., and Circuit Court Reporter Regina Gentry) (doc. no. 9); a motion to dismiss by defendants Limestone County and Limestone County Commissioners Stanley Menefee, David Siebert, Tommy Raby, Bill Latimer, and Gerald Barksdale (doc. no. 10); and a motion to dismiss or, alternatively, for more definite statement of plaintiff's complaint, by defendants Limestone County Sheriff Mike Blakely and Deputy Sheriff Allen Craig (doc. no. 11). Each motion argues for dismissal of plaintiff's complaint on a variety of grounds.

Plaintiff's complaint stems from an incident during her defense of a criminal proceeding before defendant Limestone County, Alabama Circuit Judge James W. Woodroof, Jr., during which Judge Woodroof held plaintiff in contempt of court, and ordered her incarcerated in the Limestone County jail.

Plaintiff invoked this court's subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 [sic],[1]

---

[1] There is no diversity of citizenship.

1343, and 1367 (complaint ¶ 1, at 2), and seeks relief under 42 U.S.C. §§ 1983 and 1988[2] for, among other things, alleged violations of plaintiff's Fourteenth Amendment rights to due process and equal protection of the laws, and her First Amendment right to freedom of speech, and rights guaranteed by the Fourth, Fifth, Sixth, and Eighth Amendments. Plaintiff also seeks this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over state law claims alleging conspiracy, abuse of process, false imprisonment and/or false arrest, assault and battery, invasion of privacy, libel and slander, and outrageous conduct.

All defendants seek dismissal of plaintiff's complaint on the grounds that her claims are barred by the so-called "*Rooker-Feldman* doctrine,"[3] which "places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman ex rel Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). These limits are appropriate because "federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc). Specifically, the *Rooker-Feldman* doctrine deprives federal district

---

[2] Section 1983 is not jurisdictional, and it is not "itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (citations and internal quotation marks omitted). In pertinent part, the statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

42 U.S.C. § 1983. In the amended complaint (see discussion *infra*, at note 4), plaintiff stated that : "Jurisdiction of this Honorable Court is also invoked pursuant to 42 U.S.C. § 1985." Again, § 1985 is not jurisdictional, but creates civil remedies for conspiracies which deprive a person of rights secured by the Fourteenth Amendment. In any event, the addition of this statutory basis for plaintiff's claims does not alter this court's subsequent discussion.

[3] *See* Motion to Dismiss (doc. no. 9), at 2,

2

courts and circuit courts of appeal of subject matter jurisdiction over claims that are inextricably intertwined with a previous state court judgment when the federal plaintiff had a reasonable opportunity to raise the federal claims in the state court proceedings. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 1311-15, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *Sipos*, 259 F.3d at 1327; *Siegel*, 234 F.3d at 1172; *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997); *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996). "A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Siegel*, 234 F.3d at 1172. A party's ability to raise a claim on appeal of the state court judgment constitutes a reasonable opportunity to raise her claim in the state court proceedings. *See Blue Cross and Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1555 (11th Cir. 1989).

Plaintiff's initial complaint brings due process, equal protection, and First Amendment free speech claims under 42 U.S.C. § 1983, in a challenge to the specific conduct of defendants during proceedings in which plaintiff was cited and jailed for contempt of court, to the conduct of defendants while plaintiff was incarcerated, and to the procedures employed by defendants during the course of her subsequent state appellate court proceedings. Plaintiff also asserts state law claims that similarly challenge defendants' conduct prior to, during, and following plaintiff's incarceration for contempt.

Plaintiff subsequently amended her complaint, in response to defendants' assertion that such specific challenges to state court proceedings were barred by the *Rooker-Feldman* doctrine. In her amendment, plaintiff appears to bring a general constitutional challenge to Alabama trial and

3

appellate court procedures, perhaps because "federal district courts have jurisdiction over general constitutional challenges." *Blue Cross and Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1554 (11th Cir. 1989); *see also Grendell v. Ohio Supreme Court*, 252 F.3d 828, 836 (6th Cir. 2001) (recognizing that, in case seeking injunctive relief to prevent the enforcement of a sanctions that had been imposed on plaintiff by the Ohio Supreme Court, the "*Rooker-Feldman* doctrine likely barred federal district court review of the imposition of sanctions — as that would involve lower federal court review of the Ohio Supreme Court's judgment.... Grendell voluntarily amended this initial complaint to a general constitutional challenge," which "conform[ed] with the strictures of the *Rooker-Feldman* doctrine"). To that end, although plaintiff does not cite any particular rule, she asserts in Count One of her amended complaint that "the State of Alabama maintains a custom, policy, procedure and law which denies appellants a true and complete copy of the appellate record, and which thereby deprives the appellant of due process and equal protection."[4] Count Two alleges that "Alabama maintains a policy, practice and law which mandates an appeal bond to avoid incarceration, or to be released therefrom . . . forc[ing] the appellant to choose between an appeal or incarceration . . .," thereby "depriv[ing] the appellant of a reasonable opportunity to use the appellate system, or of the constitutional right to reasonable bail . . . ."[5] In Count Three, plaintiff asserts that the State of Alabama "maintains a custom, policy, procedure, or practice which permits it to render a finding and/or decision on an appellate issue after finding that said appellate issue was not preserved for appellate review," and that such policy "effectively denies the appellant a fair and

---

[4] Plaintiff's Amended Complaint (doc. no. 16), at 1. *Nota bene*: The pleading filed on May 30, 2002 as document number 16 was entitled "Plaintiff's Response to Defendants' Motion to Dismiss." Plaintiff subsequently moved on August 20, 2002 "To Correct [the] Caption" of her previously filed pleading to correctly reflect that she intended it to be "Amendment One to Complaint" (doc. no. 19). This court has so construed document no. 16.

[5] Doc. no. 16 (construed as amended complaint) at 4.

4

impartial hearing in the State appellate court; and deprives the appellant of an opportunity to seek legal redress in a separate lawsuit in Federal Court . . . ." [6] Plaintiff states that these customs or policies violate her Sixth Amendment right to a fair and impartial trial. Finally, Count Four of plaintiff's amended complaint alleges that the State of Alabama "maintains a custom, policy, practice [sic] which permits them [sic] to 'second guess' the reasons for a trial judge's decision," and that such violates her constitutional rights under the Fifth, Sixth, and Fourteenth Amendments.[7]

While plaintiff's amended complaint appears to state a general constitutional challenge, that is mere artifice. Even as amended, her complaint smacks of nothing more than a challenge to the specific conduct of defendants before, during, and following her incarceration for contempt on March 23, 2000. As grounds for this conclusion, this court first points to the remainder of plaintiff's amended complaint. For example, in paragraph two of amended "Count One," plaintiff specifically challenges: the rejection by the Alabama Criminal Court of Appeals of documents allegedly missing from the appellate record regarding her contempt conviction;[8] contests findings of the Court of Criminal Appeals as to the rulings and conduct of defendant Judge Woodroof regarding plaintiff's contempt conviction;[9] and, alleges impropriety by that court surrounding plaintiff's attempt to correct or supplement the record regarding her contempt conviction.[10] Count Two of the amended complaint specifically challenges: plaintiff's removal from the courtroom by defendant Judge Woodroof;[11] contests plaintiff's incarceration itself, along with her alleged inability to file a post-judgment motion

---

[6] *Id.* doc. no. 16 (construed as amended complaint), at 6.

[7] *Id.* at 7-8.

[8] *See id.* at 2 (Count One).

[9] *See id.*

[10] *See id.*

[11] *See id.* at 4 (Count Two).

5

prior to her appeal of the contempt conviction;[12] and the ruling by the Alabama Court of Criminal Appeals on her appeal of the contempt conviction.[13] Counts Three and Four of the amended complaint also specifically challenge the ruling of the Alabama Court of Criminal Appeals on plaintiff's appeal of her contempt conviction.[14] The remainder of the amended complaint similarly contests the specific actions of defendants regarding plaintiff's March 23, 2000 contempt conviction, arrest, incarceration, and subsequent appeal.[15]

Also supporting a finding that plaintiff is specifically challenging the state court proceedings below is the fact that, in her motion to correct the caption of her amended complaint (doc. no. 19), plaintiff states that the amended complaint is to be read in conjunction with her original complaint. Looking to the original complaint, the court is unable to find a single count within that pleading that resembles a general constitutional challenge. Instead, each of the counts in the original complaint is focused on plaintiff's March 23, 2000 contempt conviction, arrest, incarceration, and subsequent appeal. Given these facts, the court is of the opinion that plaintiff brings solely a specific challenge to the state trial and appellate court proceedings governing plaintiff's contempt conviction. In essence, plaintiff seeks to have this court reverse the rulings of the state trial court and the Alabama Court of Criminal Appeals on the matter of her contempt conviction.

This court does not have subject matter jurisdiction to review the final judgments of the state courts in those proceedings, however, and plaintiff's claims are due to be dismissed, unless plaintiff

---

[12] *See* doc. no. 16 (construed as amended complaint), at 4.

[13] *See id.* at 5.

[14] *See id.* at 7.

[15] *See id.* at 8-13 (stating a conspiracy and abuse of process claim against defendants Judge Woodroof, Paige, Gentry, Valls, and Jones for conduct concerning plaintiff's contempt conviction, incarceration, and subsequent appeal; also stating claims against defendants Limestone County, Limestone County Commissioners, Blakely, and Craig for alleged mistreatment during her incarceration in March of 2000).

has shown that she had "no reasonable opportunity to raise [her] federal claim in state proceedings." *Goodman*, 259 F.3d at 1333 (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)). Plaintiff has failed to make this showing. According to the Alabama Court of Criminal Appeals, plaintiff argued, for the first time on appeal of her contempt conviction, that defendant Judge Woodroof "violated both Alabama law and constitutional principles."[16] That court noted that it

> has consistently held that its review is limited to claims properly raised in and ruled upon by the trial court. *See Brown v. State*, 701 So. 2d 314, 316 (Ala. Crim. App. 1997) (contemnor's claims not preserved, because they were not raised in the trial court). Because Caffey did not raise claims regarding the propriety of the contempt citation and sentence in the trial court, she has failed to preserve these issues for appellate review.[17]

The Court of Criminal Appeals nonetheless proceeded to consider the validity of plaintiff's contempt conviction, and concluded that there had been no error by the trial court in citing plaintiff for contempt.[18] Accordingly, this court concludes that plaintiff had adequate opportunity to pursue her constitutional claims in the state courts.

This court finds that plaintiff similarly had an opportunity to pursue her claims that the trial court had "falsely certified" the record on appeal. The Court of Criminal Appeals noted that, dissatisfied with the record on appeal, plaintiff filed a motion to correct and/or supplement the record in the criminal appellate court. Because Alabama Rule of Appellate Procedure 10(g) dictates that such motions are to be filed in the appropriate circuit court, the Court of Criminal Appeals transferred the motion to the circuit court for disposition.[19] Defendant Judge Woodroof entered an

---

[16] Plaintiff's evidentiary submissions (doc. no. 18), Ex. B (Petition for Writ of Certiorari), Ex. 9 (Memorandum), at 10.

[17] *Id.*

[18] *See id.*

[19] *See id.*

7

order stating that "he had reviewed the transcript and the court record with the circuit clerk and the court reporter, and determined that the record, as submitted, was true, correct, and complete."[20] At that juncture, plaintiff was entitled to seek "appropriate relief in the appellate court" by requesting that the Court of Criminal Appeals "order that a supplemental or corrected record be certified if the record was incorrect or incomplete."[21] Plaintiff chose not to pursue relief in the appellate court, however.[22]

In light of plaintiff's failure to pursue her claims at the state court level, despite her opportunity to do so, plaintiff's claims are barred by the *Rooker-Feldman* doctrine, and are due to be dismissed. It therefore is not necessary for this court to address the issues of whether plaintiff's claims also are barred by judicial, prosecutorial, qualified, and Eleventh Amendment immunities. An appropriate order will be entered contemporaneously herewith.

DONE this 5th day of September, 2002.

_____
United States District Judge

---

[20] *Id.* at 10-11.
[21] *Id.*
[22] *See id.* at 11.

8