FILED

2006 Dec-13  PM 12:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **SHERRYL SNODGRASS CAFFEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-02-S-0755-NE** |
| | ) | |
| **STATE OF ALABAMA, *et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

The history of this case, and a summary of the relevant facts, are contained in the memorandum opinion entered on August 31, 2006,[1] and will not be reiterated here, except as necessary to resolve the remaining issues.  In an order accompanying the August 31 memorandum opinion, the court dismissed plaintiff's remaining Eighth Amendment claim against defendants Limestone County and the Limestone County Commissioners.  The court also dismissed plaintiff's Eighth Amendment claims against defendant Allen Craig, in both his individual and official capacities, and against defendant Limestone County Sheriff Mike Blakely, in his official capacity only.  The court reserved ruling on plaintiff's Eighth Amendment claim against Blakely, in his individual capacity, as well as on plaintiff's remaining state law claim

---

[1]Doc. no. 81.

against *all* defendants.[2]  The court concluded that plaintiff had

> produced evidence that male inmates and visitors *were* present in the hallway [outside plaintiff's cell], in violation of jail policy, and that these individuals viewed her through the window in her cell door. Further, plaintiff produced evidence that Sheriff Blakely was aware of this viewing by unattended opposite-sex inmates, but took no action to address the issue.[3]

The court found that "this evidence — of unattended male inmates and visitors being allowed to view plaintiff through the window in her cell door, and of Sheriff Blakely's failure to take appropriate action upon being notified of the condition — was sufficient to support an Eighth Amendment claim based on opposite-sex viewing."[4]  The court ultimately found, however, that it did not have sufficient information before it to determine whether Sheriff Blakely is protected by the doctrine of qualified immunity from liability on the remaining aspect of plaintiff's Eighth Amendment claim.[5]  The court therefore ordered the parties to file

---

[2]Doc. no. 82.

[3]Doc. no. 81, at 30 (emphasis in original).

[4]*Id.*

[5]*Id.* at 33.  Specifically, the court stated:

Sheriff Blakely argues that he is entitled to qualified immunity on all remaining aspects of plaintiff's Eighth Amendment claim, and plaintiff argues that he is *not* entitled to immunity.  Nonetheless, neither party makes any argument on whether plaintiff's right to be free from viewing by unattended male inmates and visitors is clearly established.  The court has seen no case law addressing those factual circumstances; rather, the relevant case law discusses viewing by opposite-sex *corrections officers,* not opposite-sex inmates.  Even so, the court concludes the burden of conducting the research and formulating arguments on whether qualified immunity is an available defense should rest on the parties, in the first instance, and

supplemental briefs on the qualified immunity issue.[6]  The court emphasized that "the

*only* factual claim relevant to the qualified immunity analysis is whether viewing by

unattended opposite-sex inmates and visitors, without a valid penological purpose,

violates plaintiff's Eighth Amendment rights," and cautioned the parties that it would

not consider any additional factual arguments.[7]

## PART ONE

*Discussion of Plaintiff's Remaining Eighth Amendment Claim*

The doctrine of qualified immunity protects government officials who are sued

under 42 U.S.C. § 1983 for money damages in their personal, or individual,

---

not on the court.  Accordingly, the parties will be required by separate order, to file
supplemental briefs on the issue of qualified immunity.

*Id.* (emphasis in original).  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) (holding that, in a qualified immunity analysis, a court must first ask whether the defendant's conduct violated a constitutional right, then determine whether that right was clearly established).

    [6]Doc. no. 82, at 2.

    [7]Doc. no. 81, at 34.  Despite this admonition, both parties presented several pages of additional facts in their supplemental briefs.  Most of the facts alleged by plaintiff are simply a reiteration of circumstances she has previously recited in her prior briefs.  These facts largely relate to claims that already have been dismissed, and they consequently will not be considered in this opinion.  Further, many of the additional facts cited by defendant go to show that male inmates and/or visitors *did not* view any of plaintiff's sexual organs in her cell.  However, plaintiff has previously offered evidence that male inmates and visitors *did* view her through the window in her cell door, that two of plaintiff's visitors to the jail complained about the situation to Sheriff Blakely, and that Blakely took no action in response.  *See* doc. no. 63 (plaintiff's evidentiary submission), Exhibit 2 (Affidavit of Doris Baker), at 3-4; *id.,* Exhibit 4 (Affidavit of Brett Caffey), at 2.  At this summary judgment stage, all facts must be considered in the light most favorable to plaintiff, as they were in this court's prior opinion.  *See* doc. no. 81, at 13-14.  Thus, the court concludes that it need not consider the additional factual arguments asserted by both parties in their supplemental briefs.  All "facts" necessary to decide the issue of *qualified immunity* have already been decided.

capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether the unlawfulness of an official's actions was clearly established, "'the salient question is whether the state of the law [at the time of the unconstitutional act] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Williams v. Consolidated City of Jacksonville,* 341 F.3d 1261, 1270 (11th Cir. 2003) (bracketed alterations in original) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). The Supreme Court rejected this Circuit's requirement that the facts of previous cases must *always* be "materially similar" to those facing the plaintiff. *Hope*, 536 U.S. at 739. Instead,

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth,* 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

*Hope,* 536 U.S. at 741 (bracketed alterations in original).

An officer can receive "fair notice" of his or her unlawful conduct in various ways.

First, the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the *total absence of case law.*  This kind of case is one kind of "obvious clarity" case.   For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful.

Second, if the conduct is not so egregious as to violate, for example, the Fourth Amendment on its face, we then *turn to case law.* When looking at case law, some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts.  *See Marsh*[ *v. Butler County*]*,* 268 F.3d [1014,] 1031-32 n.9 [(11th Cir. 2001)].  For example, if some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional *without tying* that determination to a particularized set of facts, the decision on "X Conduct" can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding "X Conduct" are immaterial to the violation.  These judicial decisions can control "with obvious clarity" a wide variety of later factual circumstances.  These precedents are hard to distinguish from later cases because so few facts are material to the broad legal principle established in these precedents; thus, this is why factual differences are often immaterial to the later decisions.  But for judge-made law, there is a presumption against wide principles of law.  And if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so "with obvious clarity" to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.

Third, if we have no case law with a broad holding of "X" that is not tied to particularized facts, we then look at precedent *that is tied to the facts.*  That is, we look for cases in which the Supreme Court or we, or the pertinent state supreme court has said that "Y Conduct" is

> unconstitutional in "Z Circumstances." We believe that most judicial precedents are tied to particularized facts and fall into this category. . . . When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so, qualified immunity applies. On the other hand, if the circumstances facing a government official are not fairly distinguishable, that is, are materially similar, the precedent can clearly establish the applicable law.

*Vinyard v. Wilson,* 311 F.3d 1340, 1350-52 (11th Cir. 2002) (emphasis in original).

Additionally, once a defendant has established that he was acting within his discretionary authority — a point which cannot reasonably be questioned with regard to Blakely in this case — the burden shifts *to the plaintiff* "to show that qualified immunity is inappropriate." *Travers v. Jones,* 323 F.3d 1294, 1295 (11th Cir. 2003). *See also Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (same).

The court concludes that plaintiff cannot shoulder her burden in this case by relying solely upon the language of the Eighth Amendment, or upon any broad principle announced in case law. In other words, it will not be sufficient merely to evaluate, without considering the specific factual context, whether Blakely was on fair notice that his conduct would constitute "cruel and unusual punishment," or "the unnecessary and wanton infliction of pain,"or even whether it was "devoid of penological merit and imposed simply to inflict pain." *See Harris v. Ostrout,* 65 F.3d 912, 916 (11th Cir. 1995) (quoting *Wilson v. Seiter,* 501 U.S. 294, 296-98 (1991) (in

turn quoting *Estelle v. Gamble,* 429 U.S. 97, 104-05) (1976))); *see also Harris,* 65 F.3d at 916 (citing *Turner v. Safley,* 482 U.S. 78, 83-85 (1987)).  As the Eleventh Circuit has noted, general principles like these usually are sufficient to place an official on notice that his conduct violates clearly established law only when they are announced "with obvious clarity" in a case containing few material, limiting facts. *See Vinyard,* 311 F.3d at 1351 n. 19 ("We generally accept that the smaller the number of material facts in an opinion, the wider will be the legal principle it decides."); *Thomas v. Roberts,* 323 F.3d 950, 954 (11th Cir. 2003) ("[W]here the applicable legal standard is a highly general one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law.").

Here, the relevant case law is highly fact-specific.  This conclusion is apparent from the cases the court relied upon in its prior opinion to determine whether plaintiff's evidence was sufficient to support a violation of the Eighth Amendment based on the invasion of her bodily privacy.[8]  The outcomes of those cases — which primarily concerned the viewing of an inmate's sexual organs by opposite-sex jail guards — turned largely on their particularized facts, including:  the closeness of the

---

[8]*See* doc. no. 81 (Memorandum Opinion), at 22-30.

guards' range of sight; the frequency and duration of the viewing; whether there was any retaliatory or harassing motive; whether physical contact was involved; whether the inmates suffered from any pre-existing psychological sensitivities; whether the officers had any legitimate penological justification for the invasions; and whether equal opportunity concerns justified the assignment of opposite-sex guards to conduct searches.  *See Somers v. Thurman,* 109 F.3d 614, 615-16, 622-24 (9th Cir. 1997); *Johnson v. Phelan,* 69 F.3d 144, 145-151 (7th Cir. 1995); *Jordan v. Gardner,* 986 F.2d 1521, 1523-1531 (9th Cir. 1993); *Kent v. Johnson,* 821 F.2d 1220, 1227-28 (6th Cir. 1987).

Therefore, general principles of Eighth Amendment case law will not establish "with obvious clarity" whether Blakely had fair notice that his conduct was illegal. Instead, to determine whether Blakely violated clearly established law, the court must look to the third category of case law discussed in the Eleventh Circuit's *Vinyard* opinion:  *i.e.,* those cases that are "tied to particularized facts" that are "materially similar" to, and not "fairly distinguishable from," the circumstances Blakely encountered in this case.  *Vinyard,* 311 F.3d at 1351-52.

The relevant case law consists of decisions by the United States Supreme Court, the Eleventh Circuit, and the Alabama Supreme Court.

When case law is needed to "clearly establish" the law applicable

to the pertinent circumstances, we look to decisions of the U.S. Supreme
Court, the United States Court of Appeals for the Eleventh Circuit, and
the highest court of the pertinent state. *See Jenkins*[ *v. Talladega City
Bd. of Education*], 115 F.3d [821,] 827 n.4 [(11th Cir. 1997)]. We do
not understand *Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 143 L.
Ed. 2d 818 (1999), to have held that a "consensus of cases of persuasive
authority" from other courts would be able to establish the law clearly.
*Id*. at 1700. Each jurisdiction has its own body of law, and splits
between jurisdictions on matters of law are not uncommon. We do not
expect public officials to sort out the law of every jurisdiction in the
country.

*Marsh*, 268 F.3d at 1032 n.10. Thus, to overcome the qualified immunity defense,

plaintiff bears the burden of pointing to decisions of the United States Supreme

Court, the Eleventh Circuit, or the Supreme Court of Alabama that were handed down

prior to the date on which her own injuries occurred, and which involved materially

indistinguishable facts, such that they could have placed Blakely on fair and clear

notice that his conduct during plaintiff's incarceration was unlawful.

Plaintiff has presented no authority that fits this description. She does direct

this court to the Eleventh Circuit's decision in *Farrow v. West,* 320 F.3d 1235, 1242

(11th Cir. 2003), for the proposition that "[t]he Eighth Amendment, while not

requiring comfortable prisons, does not permit inhuman ones."[9] This principle,

though valid, is far too general to give Blakely fair warning that his conduct violated

---

[9]Doc. no. 89 (plaintiff's response brief), at 19.

clearly established law.[10]

Plaintiff also cites the decision of the Alabama Supreme Court in *Lightfoot v. Floyd,* 667 So. 2d 56 (Ala. 1995), which addressed *state law claims* for conversion, false imprisonment, defamation, slander of title, and negligence against officials of Alabama A & M University — all arising out of the seizure of plaintiff's property by university law enforcement officials.  *Id.* at 59.  Plaintiff relies upon the following passage from that decision:  "An individual cannot justify a tort on a contention that it is for the state, if the state had no such right.  If the state had the right, then its officers acting by its authority, were justified."  *Id.* at 65.  This statement was made in the context of determining whether an individual defendant was engaged in the exercise of a discretionary function under state law, and it has no relevance to the issue of qualified immunity in the present case.  The *Lightfoot* decision did not even involve a claim under the United States Constitution, much less an Eighth Amendment claim based upon opposite-sex viewing of an inmate's sexual organs. *Lightfoot* contains no facts which are even *minimally* similar to those at issue in this case.[11]  Therefore, the decision could not have placed Blakely on fair notice that his

---

[10]*See* discussion, pages 6-8, *supra.*

[11]Indeed, the only similarity between the *Lightfoot* decision and the instant case appears to be that plaintiff served as the attorney for the plaintiff in *Lightfoot.*

conduct violated clearly established law.[12]

As plaintiff has cited no relevant authority from the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court containing facts that are materially indistinguishable from the facts of the present case, she has failed to meet her burden of persuading the court that Blakely violated clearly established law. That failure alone would be sufficient to support the decision to grant Blakely qualified immunity. *See, e.g., Travers*, 323 F.3d at 1295 ("Once the defendants established that they were acting within their discretionary authority, . . . the burden shifted to the plaintiff to show that qualified immunity is inappropriate.").

Even so, the court notes that its own review of the relevant authority revealed no case law sufficiently similar to the facts of the present case to place Blakely on fair warning that his conduct — allowing unattended male inmates and visitors to look

---

[12]Plaintiff also cites two Alabama cases to support the proposition that "[q]ualified immunity is an affirmative defense that the defendant must raise and prove, and upon a defendants [sic] motion for summary judgment the burden is on the defendant to show that his acts are entitled to such immunity." Doc. no. 89 (plaintiff's response brief), at 20 (citing *Grant v. Davis*, 537 So. 2d 7 (Ala. 1988); *Phillips v. Thomas*, 555 So. 2d 81 (Ala. 1989)). As an initial matter, both of these cases involve *state law* immunities. Further, plaintiff does not accurately describe the burden of proof for a claim of qualified immunity under *federal* law. It is true that qualified immunity is an affirmative defense, which the defendant must either plead or waive. *See Moore v. Morgan*, 922 F.2d 1553, 1557 (11th Cir. 1991). Even so, once a defendant has raised the issue of immunity, the burden of persuasion is on the plaintiff to show that immunity is not appropriate. *See, e.g., Travers v. Jones*, 323 F.3d 1294, 1295 (11th Cir. 2003) ("Once the defendants established that they were acting within their discretionary authority, . . . the burden shifted to the plaintiff to show that qualified immunity is inappropriate."). Further, and more importantly, plaintiff's attempt to recite the respective burdens of proof in a qualified immunity claim does nothing to show whether Blakely received fair warning that his conduct violated plaintiff's clearly established constitutional rights.

-11-

through the window in plaintiff's cell door, and taking no action to remedy the situation upon receiving notice — violated clearly established law.  In *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995), the Eleventh Circuit concluded that "strip searches" of inmates *by guards of the same sex as the person searched* do not violate the Eighth Amendment if they are conducted uniformly and without a retaliatory motive.  *Id.* at 916.  Those facts are materially distinguishable, because plaintiff complains of being viewed by members of the *opposite* sex.  The other cases this court relied upon, in its prior opinion, to determine that plaintiff's evidence supported a violation of the Eighth Amendment, hail from other Circuit Courts of Appeal and, therefore, cannot give fair notice of clearly established law to Blakely, a public official serving in one of the three states comprising the Eleventh Circuit.  *See Marsh*, 268 F.3d at 1032 n.10 (stating that the relevant case law includes decisions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court of the state in which the suit is brought); *see also Somers,* 109 F.3d at 615-16, 622-24; *Johnson,* 69 F.3d at 146-51; *Jordan,* 986 F.2d 1523-31; *Kent,* 821 F.2d at 1227-28.[13]

    One more recent case from the Eleventh Circuit did involve facts similar to

---

[13]In addition, these cases concerned claims of opposite-sex viewing of inmates by *prison guards,* not by other inmates, or by visitors to the jail.  *See Somers,* 109 F.3d at 615-16, 622-24; *Johnson,* 69 F.3d at 146-51; *Jordan*, 986 F.2d 1523-31; *Kent*, 821 F.2d at 1227-28.

those presented here.  In *Boxer X v. Harris,* 437 F.3d 1107 (11th Cir. 2006), the Eleventh Circuit considered an Eighth Amendment claim by a male inmate who alleged that, throughout a period of several months, a female guard repeatedly required him, under threat of reprisal, to remove his clothing and "perform sexual acts of self-gratification" while she watched.  *Id.* at 1109.  The court recognized that "severe or repetitive acts of *sexual abuse* of a prisoner by a prison official can violate the Eighth Amendment."  *Id.* at 1111 (emphasis supplied) (citing *Giron v. Corrections Corp. of America,* 191 F.3d 1281, 1290 (10th Cir. 1999); *Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir. 1997); *Boddie v. Schnieder,* 105 F.3d 857, 860-61 (2d Cir. 1997)).  The official's acts must cause an "'objectively, sufficiently serious'" injury, or, in other words, an injury that is "more than *de minimis.*"  *Boxer X,* 437 F.3d at 1111 (citing *Boddie,* 105 F.3d at 861 (in turn citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)); *Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir. 2002)).  The Eleventh Circuit concluded that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury."  *Boxer X,* 437 F.3d at 1111.  Therefore, the court affirmed the dismissal of the plaintiff's Eighth Amendment claim.  *Id.*

Because the *Boxer X* decision was issued in 2006, several years *after* the occurrence of those events leading to this action, it cannot be considered law that was

sufficiently "clearly established" to guide Blakely's actions.  *See Lassiter v. Alabama A & M University Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994) (stating that "courts judge the acts of defendant government officials against the law and facts at the time defendants acted, not by hindsight, based on later events").

Even so, the *Boxer X* decision does seem to indicate, if anything, that Blakely *did not* violate clearly established law.   The facts of the present case are distinguishable from those in *Boxer X,* as that case concerned viewing by an opposite-sex prison guard, not opposite-sex inmates or visitors.  However, the facts of *Boxer X* are considerably *more* egregious than those presented here.  For instance, *Boxer X* involved the required performance of actual sex acts, not just the viewing of an inmates' private parts by some peripatetic peeping Toms.  Furthermore, the offending party in *Boxer X* was not a fellow inmate or a visitor, but a prison guard, who occupied a position of authority over the plaintiff.  Thus, if the *Boxer X* decision *had* predated plaintiff's claims, its conclusion that far more egregious conduct amounted to only *de minimis,* non-actionable injury would not have placed Blakely on notice that his conduct was unlawful.  *See also Nesbitt v. Florida,* No. 5:05CV98/LAC/EMT, 2006 WL 1653602, *5 (N.D. Fla. June 9, 2006) (holding that a plaintiff's allegations of lack of privacy, and of "female guards inviting female inmates to view male inmates in the nude" presented an even "lesser level of injury"

-14-

than that discussed in *Boxer X,* and could not support an Eighth Amendment claim).

In summary, no relevant case law shows that Blakely violated clearly established law under the Eighth Amendment, even assuming as alleged by plaintiff that he allowed plaintiff to be viewed naked in her cell by unattended male inmates and visitors who were walking through jail corridors, and that he took no action in response to complaints about the situation.   Accordingly, Blakely is entitled to qualified immunity from the remaining aspect of plaintiff's Eighth Amendment claim, and that claim is due to be dismissed.

**PART TWO**

*Plaintiff's State Law Claim*

Plaintiff's sole remaining claim is one for invasion of privacy under Alabama law.[14]  This court's supplemental jurisdiction over this state law claim is governed by 28 U.S.C. § 1367(a), which provides that,

> in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

That does not end the discussion, however.  Rather, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district

---

[14]*See* doc. no. 26 (April 14, 2003 Mandate from Eleventh Circuit Court of Appeals), at 12 & n.8; doc. no. 16 (Amended Complaint), at 12-13.

court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  This court chooses to exercise its discretion under § 1367(c)(3) and declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim.  Accordingly, that claim will be dismissed, but without prejudice to plaintiff's right to pursue it, if she chooses, in an appropriate state forum.

An appropriate order will be entered contemporaneously herewith.

DONE this 13th day of December, 2006.

_____

United States District Judge